## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| HERMON REZENE, | |
| Plaintiff, | |
| v. | Case No. 2:25-cv-02305-HLT-GEB |
| U.S.D. 500 and MARY STEWART, | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiff Hermon Rezene, a social worker with the U.S.D. 500 school district, brings this §§ 1983 and 1981 hostile work environment case against the district and her former principal. Plaintiff claims another district employee created a race-based hostile work environment. She contends Mary Stewart (the former principal) is liable for the hostile work environment because Stewart failed to prevent or remedy the race-based harassment. And she seeks to hold the school district liable based on a municipal liability theory. Both Stewart and the school district moved to dismiss. Docs. 5, 12.

The Court grants both motions. Stewart is entitled to qualified immunity because Plaintiff fails to identify clearly established law that Stewart violated with her action or inaction. And the school district is entitled to dismissal because Plaintiff has not plausibly alleged that it had a policy or custom that caused Plaintiff's injury.

## I.    BACKGROUND[1]

Plaintiff worked as a behavioral health social worker at Wyandotte High School. Stewart was the principal. Wyandotte High School is part of U.S.D. 500, a unified public school district created by state law. It is a governmental subdivision of Kansas. The school district is governed by a board of education.

Plaintiff alleges that Matthew Greenberg, a special education teacher at the school, subjected her to a hostile work environment based on her race. The school district has a board policy prohibiting discrimination, harassment, and retaliation. It also maintains a board policy allowing for informal and formal complaint procedures. And it has a policy directed at racial and disability harassment.

Plaintiff filed a grievance against Greenberg on May 2, 2022, and sent it to her supervisors, including Stewart. Plaintiff and Greenberg met with the vice principal. The meeting ended with Greenberg pointing his finger at Plaintiff, stating, "I'm not here to answer your questions," and storming out. Stewart stopped by Plaintiff's office the next day and said, "I heard the meeting didn't go so well." She explained the grievance process to Plaintiff. Stewart told Plaintiff that she would meet with Greenberg separately before meeting with them together to mediate the grievance.

Stewart met with Greenberg and informed Plaintiff about the meeting on May 6. Stewart told Plaintiff that Greenberg "is really just immature, and lacks professional decorum," and that she would provide him with "some coaching." Plaintiff explained that she felt unsafe because of

---

[1]    The following facts are taken from the well-pleaded complaint and accepted as true at this stage of the proceedings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the hostile work environment created by Greenberg. But Stewart did not take Plaintiff's concerns seriously. Plaintiff asked when the mediation would occur. Stewart said it would be later that week.

The mediation had not happened by May 23, so Plaintiff followed up with Stewart. Plaintiff was summoned to a meeting with Stewart and Greenberg three days later. Six additional teachers who were friends and supporters of Greenberg attended the meeting. Stewart said there was a lot of tension in the room and everyone needed to get along and work together next year. Plaintiff was disappointed with the meeting and felt attacked. Plaintiff asked Stewart immediately after the meeting when they would meet with Greenberg alone to mediate. Stewart responded that they would not be meeting with Greenberg this year and that they would deal with it next school year.

August 2022 started no better for Plaintiff. Greenberg continued to create a hostile work environment. Another teacher, Michael Rebne, filed a complaint with the school district in September regarding Greenberg's conduct toward Plaintiff. Rebne described how Greenberg had publicly yelled at Plaintiff, exclaiming "I hate you," acted in an intimidating manner toward Plaintiff, and told others how much he hates Plaintiff. Rebne referred to Greenberg's conduct as bullying and said "its ongoing nature makes it feel condoned, especially by white colleagues and even building leadership." The school district sent a letter to Rebne in October, stating that his complaint was substantiated and Human Resources had addressed his concerns.[2]

Greenberg continued to create a hostile work environment for Plaintiff throughout the fall semester. Plaintiff repeatedly asked Stewart when they would mediate her issues with Greenberg.

---

[2] Plaintiff's allegations blur the line between whether Rebne's complaint was substantiated or her grievance was substantiated. *Compare* Doc. 1 ¶ 28 with Doc. 1 ¶ 31. It is unclear whether Plaintiff's own grievance was substantiated or what steps she took beyond trying to schedule mediation. To the extent only Rebne's complaint was substantiated, the Court questions whether Plaintiff has standing to raise a *Monell* claim about anything tied to Rebne's complaint or the actions taken (or not taken) as a result of it. Recognizing the rules associated with a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in her favor and understands her own grievance to have been substantiated.

Stewart continued to avoid this meeting and told Plaintiff, "It's time to let this go." Stewart finally agreed to allow Plaintiff to meet with Dr. Canise Salinas-Willich in January 2023 to discuss her ongoing issues with Greenberg. Salinas-Willich was the school district's Executive Director of Diversity, Equality and Inclusion.

Plaintiff and Stewart met with Salinas-Willich on January 13. Salinas-Willich expressed surprise that Plaintiff and Greenberg had not yet mediated. She stated that she was aware of the situation because she was working with Greenberg as part of the outcome of Plaintiff's grievance. Salinas-Willich agreed to facilitate mediation. She also agreed to meet with Greenberg first, to prepare him for the mediation. The mediation was scheduled for January 20. But again, the mediation did not happen.

Plaintiff went on maternity leave in February 2023. She returned to work for the last two weeks of the school year in May 2023. Her last day was May 24, 2023. Plaintiff then transferred to an elementary school for the next school year because of the hostile work environment. Greenberg resigned from his job in 2023 when summer school ended.

## II.    STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

(quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.    ANALYSIS

Each defendant moves to dismiss on different grounds. Stewart asserts she is entitled to qualified immunity because Plaintiff fails to show the violation of a clearly established statutory or constitutional right. The school district contends that Plaintiff fails to plead facts showing it has municipal liability based on its employee's actions. Both also argue that the statute of limitations bars the claims, but Stewart abandons that argument and the Court need not reach it for the school district.[3]

### A.    Stewart's Qualified Immunity.

Stewart asserts qualified immunity for her actions. Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations omitted). Once an official has raised a qualified immunity defense, the plaintiff bears the burden to show that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The order in which these two prongs are evaluated is within a court's discretion. But

---

[3]    Stewart's abandonment of the statute-of-limitations defense may be strategic. It appears that the Tenth Circuit applies the four-year federal limit to most § 1981 claims rather than borrowing the limit from state statutes as with § 1983 claims. *See Smith v. USD 480 Liberal*, 682 F. Supp. 3d 980, 987 (D. Kan. 2023) (citing cases including *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152-53 (10th Cir. 2008)).

once a defendant asserts qualified immunity, there is a presumption of immunity. *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021).

A right is "clearly established" for qualified immunity purposes where it is "sufficiently clear that every reasonable official would have understood" his conduct to have violated that right. *Mullenix*, 577 U.S. at 11 (citation and internal quotations omitted). To satisfy this step, courts do not require a case "directly on point." *al-Kidd*, 563 U.S. at 741. But the plaintiff must identify existing precedent. This may be controlling authority or "a robust 'consensus of cases of persuasive authority.'" *Id.* at 742. Either way, the authority must place the statutory or constitutional question "beyond debate." *Id.* at 741. The precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 580 U.S. 73, 79 (2017) (noting that courts should not define "clearly established law" at "a high level of generality").

A plaintiff cannot establish supervisory liability merely by alleging that the defendant was in charge of a person who committed the alleged violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). A plaintiff must first establish that the supervisor's subordinates violated the plaintiff's federal rights. *Id*. And the plaintiff must also allege an "affirmative link between the supervisor and the violation." *Id*. (citation and internal quotation omitted). A supervisor may be liable for a subordinate's conduct under § 1983 if she participates in or "consciously acquiesces" in racial harassment by an employee. *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999). But there must be a "'deliberate' deprivation of constitutional rights by the defendant," not mere negligence. *Id.*[4]

---

[4]  *Murrell* addressed § 1983 claims for violation of constitutional equal protection rights. Plaintiff addresses only § 1981 here. But the Court examines her claims for race-based hostile work environment under the same standard. *See generally Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1244 (10th Cir. 2000).

Plaintiff alleges that Greenberg violated her federal statutory right to be free of racial harassment. She alleges that Stewart knew of the harassment and deliberately, consciously acquiesced in it by failing to address the conduct or penalize Greenberg for continuing to harass her. The Court questions whether these allegations (as supported by the facts alleged) are sufficient to state a § 1981/§ 1983 violation. But, even if they do, Plaintiff fails to establish the second prong for qualified immunity.

Plaintiff must identify clearly established law putting Stewart on notice that her conduct was unlawful. Plaintiff identifies *Murrell*.[5] She also cites *Wilson as next friend to W.B. v. USD 290 Ottawa*, 2025 WL 2161143 (D. Kan. 2025). Neither *Murrell* nor *Wilson* constitute clearly established law that would have put Stewart on notice that her actions in this case were unlawful.

*Murrell* involved sexual harassment instead of racial harassment. It also involved student-on-student harassment instead of employee-on-employee conduct, which is not an entirely insignificant difference. But these distinguishing facts alone may not render *Murrell* so dissimilar as to make it inapplicable to this situation. Instead, it is the actual factual details of the underlying events in *Murrell* that make it different.

*Murrell* addressed a female special education student (Jones) who was repeatedly sexually assaulted at school by a male student (Doe) with known behavioral problems. Teachers were aware that Doe engaged in aggressive and sexually inappropriate conduct with Jones. Jones's mother (Murrell) reported to them that Doe had been making harassing phone calls to Jones at home. On at least one occasion, Jones told her teachers that Doe had battered and sexually assaulted her. They responded by encouraging Jones not to tell her mother and to forget the incident had

---

[5]   She cites *Ryan v. City of Shawnee*, 13 F.3d 345, 349-50 (10th Cir. 1993), as well. But she simply cites *Ryan* for the principle that racial harassment violates 42 U.S.C. §§ 1981 and 1983. Plaintiff does not appear to claim the facts of *Ryan* put Stewart on notice that her conduct was unlawful.

happened at all. On another occasion, a janitor found Doe and Jones in a secluded area of the school, where Doe was sexually assaulting Jones. Jones bled and vomited during the assault and the janitor returned Jones and Doe to the teachers and advised them where he found Jones and Doe. The teachers did not inform Murrell about the behavior, and in fact helped Jones hide the blood. Jones later started engaging in self-destructive and suicidal behavior and entered a psychiatric hospital.

Murrell learned of Jones's treatment while Jone was hospitalized. But the teachers denied it happened, told her to send Jones back to school, and refused further discussion. Murrell called the principal and left a message. But the principal did not return Murrell's call or investigate. Jones returned to school, and Doe battered her again. Other students ridiculed Jones about Doe's earlier sexual attacks. Murrell unsuccessfully tried to contact the principal multiple times. She eventually learned of a meeting scheduled to discuss Doe's sexual conduct with Jones. Murrell attended the meeting, where the principal suggested the sexual contact may have been consensual. The principal knew Jones was incapable of consenting and that Doe had admitted assaulting Jones. The principal declined to investigate and suspended Jones but not Doe.

*Murrell's* facts, which the Tenth Circuit assumed true for purposes of reviewing dismissal for failure to state a claim, are not even moderately close to the facts of this case. The teachers and principal in *Murrell* took no action at all to remedy the treatment of Jones. They knew of Doe's conduct and consciously acquiesced in it and helped hide it from Murrell. Doe's own mother had warned the teachers and principal of the need to keep an eye on him. Yet the school district instead appointed him as a janitor's assistant, which granted him access to unsupervised areas of the school. He used these secluded areas to repeatedly sexually assault Jones.

In contrast, here Greenberg publicly confronted Plaintiff about a student who was in counseling with Plaintiff instead of in math class. He aggressively marched toward her and shouted at her and the student. Plaintiff learned afterward that Greenberg had said on another occasion that he hated her. Plaintiff filed a grievance against Greenberg. The same day, the vice principal met with Plaintiff and Greenberg to discuss the grievance. Greenberg was disrespectful, condescending, and rude toward Plaintiff during the meeting. After Greenberg stormed out, the vice principal acknowledged to Plaintiff that he knew race played a role in the situation.

Stewart talked to Plaintiff the next day. Stewart explained the grievance process, met with Greenberg, provided him with coaching, and later conducted a meeting with Plaintiff, Greenberg, and other teachers. Stewart eventually agreed to a meeting with Plaintiff and Salinas-Willich, who was already aware of the situation and had been working with Greenberg as part of the outcome of Plaintiff's grievance. Stewart's actions did not satisfy Plaintiff. But Stewart's actions are far from no action at all. The facts of *Murrell* are not a reasonable comparison. *Murrell* would not have put Stewart on notice that her handling of Plaintiff's grievance was unlawful.

*Wilson* is also no help to Plaintiff. In *Wilson*, a student and his parent reported racial bullying at school at least nine times. They made reports to the school principal, counselor, district superintendent, and each individual school board member. They also reported the bullying at multiple 504 meetings. Neither the principal nor counselor offered any response or reaction. The individual defendants raised qualified immunity. Judge Melgren denied immunity, holding that a reasonable defendant would have known that deliberate indifference to the student's racial harassment violated the student's equal protection rights. *Wilson*, 2025 WL 2161143, at *4. Like *Murrell*, the response in *Wilson* was no response at all.

A case directly on point is unnecessary to render rights clearly established. *Mullenix*, 577 U.S. at 11. It is only necessary that existing precedent places the question beyond debate. *Id.* But neither of these cases do that here. They do not constitute clearly established law that put Stewart on notice that her actions in response to Plaintiff's complaints were unlawful. To hold otherwise is akin to the overbroad analysis repeatedly rejected by the Supreme Court. Plaintiff has not rebutted Stewart's assertion of qualified immunity.

### B.    U.S.D. 500's Municipal Liability.

The Court next turns to the school district's liability. A municipality (or in this case, a school district) can only be held liable under 42 U.S.C. § 1983 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur*, 475 U.S. at 480). This is because a municipality cannot be held liable simply under a theory of respondeat superior. *Pembaur*, 475 U.S. at 478; *see also Monell*, 436 U.S. at 694. Rather, a plaintiff must plead a plausible claim under the following elements to sue a municipality under § 1983 for employee actions: (1) that there was an official policy or custom, (2) that caused a violation of federally protected rights, and (3) that the policy or custom was enacted or maintained with deliberate indifference toward the potential injury. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

Plaintiff argues that she has plausibly pleaded a claim against the school district because (1) final policymaking authorities (Stewart and Salinas-Willich) "failed to take remedial and preventative action reasonably calculated to end the racial harassment" of Plaintiff by Greenberg, and (2) the district has "a custom of failing to take remedial and preventive action reasonably

10

calculated to end the racial harassment of the other employees" of the district. Doc. 1 at ¶ 39. Plaintiff's first allegation fails to establish liability because the board of education is the final decisionmaking authority under Kansas law, and she has not established that the board maintained an official policy of deliberate indifference to racial harassment. *Ware v. U.S.D. No. 492*, 902 F.2d 816, 818 (10th Cir. 1990). The second allegation fails because it is a conclusory allegation without factual support.

First, Plaintiff tries to avoid the impact of *Ware* by arguing that the board of education can delegate and has delegated its policymaking authority to subordinates. She alleges she filed a grievance pursuant to the district's written policies. She then cites the board's official policy, which states, "All District employees share in the responsibility of preventing and responding to discrimination, harassment, bullying, and retaliation." Doc. 6-2 at 4. The policy requires appropriate remedial action when there has been a determination that harassment has occurred after investigation. *Id.* at 9. But Plaintiff contends the policy only provides for appeal of the determination when there has been a policy violation, not for the decision of what remedies are appropriate. Plaintiff thus argues that the board delegated final policymaking authority for remedies to district employees including Stewart. And it is the lack of an appropriate remedy for Greenberg's conduct that she challenges here.

Plaintiff's effort is unavailing. She offers no more than a conclusory allegation that Stewart has final policymaking authority. But the law in Kansas is that the board makes policy. *Ware*, 902 F.2d at 818. It is of no import that Stewart has the discretion to make some decisions under that policy. The board has policies prohibiting discrimination (including race-based harassment). Stewart is bound to follow board-issued policies. And the board ultimately retains the authority to review or overturn her decisions. "Delegation does not occur when a subordinate's decisions

are . . . subject to review by the authorized policymaker." *Ware*, 902 F.2d at 818; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("[T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale."). Plaintiff fails to plausibly allege that Stewart has final policymaking authority such that the school district is liable for her actions. And she has not alleged that the board has policies that show deliberate indifference to racial harassment.

Second, Plaintiff's allegation that the district has a custom of failing to take remedial and preventative action is wholly conclusory. Plaintiff pleads no facts in support of this allegation. It is insufficient under *Twombly* and *Iqbal*.

## IV.    CONCLUSION

The Court dismisses Plaintiff's case with prejudice. This is generally proper under Rule 12(b)(6). Plaintiff did not amend as of right or seek leave to amend as alternative relief. Plaintiff chose to stand on her complaint. *See* Fed. R. Civ. P. 15; D. Kan. Rule 15.1; *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132-33 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (explaining that dismissal under Rule 12(b)(6) is generally with prejudice unless stated otherwise and that opportunities to amend under Rule 15 in response to motions to dismiss provide a fair opportunity for a plaintiff to avoid such a result). This approach also promotes efficiency and prevents parties from taking a "wait-and-see" approach to see what can get by before making fulsome efforts to address the challenged issues. Courts do not exist to give advisory opinions so plaintiffs can test the mettle of serial complaints. Dismissal with prejudice is appropriate in this case.

13

THE COURT THEREFORE ORDERS that U.S.D. 500's motion to dismiss (Doc. 5) and

Stewart's motion to dismiss (Doc. 12) are GRANTED. The case is closed.

IT IS SO ORDERED.

Dated: April 27, 2026                                   /s/ *Holly L. Teeter*
                                                        HOLLY L. TEETER
                                                        UNITED STATES DISTRICT JUDGE

13